UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

TRIDENT INTERNATIONAL LIMITED,   :

                Plaintiff,   :   05 Civ. 3947 (PAC)

      -against-   :

                            ORDER

AMERICAN STEAMSHIP OWNERS   :
MUTUAL PROTECTION AND
INDEMNITY ASSOCIATION, INC.,   :

                Defendant.   :

--------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Trident International Limited ("Plaintiff" or "Trident"), a cruise-ship caterer, seeks indemnity from a marine insurer for liabilities incurred following injuries suffered by three employees in the course of their catering duties. Trident was a co-assured under a protection and indemnity ("P&I") insurance policy issued by Defendant American Steamship Owners, Inc. ("Defendant," "American Club," or "the Club") to the owner of the cruise line on which Trident was catering. Trident submitted its claims to the Club, which denied reimbursement on two claims, and provided only partial reimbursement on the third. Thereafter, on April 19, 2005, Trident filed the complaint in this action, seeking full reimbursement for all three claims. The parties now cross-move for summary judgment. For the reasons set forth below, the motions for summary judgment are denied.

# SUMMARY OF FACTS[1]

Trident is a corporation which was formerly engaged in the business of providing catering services to cruise lines.[2] Trident provided food and beverage service on the "OCEAN BREEZE," a cruise ship operated by Imperial Majesty Cruise Lines ("IMCL"). IMCL was insured by American Club, a member-operated, not-for-profit, marine protection and indemnity association.[3] Under the policy, American Club provided marine P&I coverage to IMCL—and by extension to Trident as an "additional assured" by virtue of the fact that it provided services on IMCL's vessels. Although American Club is controlled by its own Board of Directors, its day-to-day affairs are managed by Shipowners Claims Bureau, Inc. ("SCB"). The Club's insurance contracts are governed by its "By-Laws and Rules" (the "Rules"), developed and adopted with its unique status as a non-profit, member-driven insurer in mind. (See By-Laws and Rules ("Rules"), American Steamship Owners Mutual Protection and Indemnity Association, Inc., attached to Defendant's Reply Memorandum of Law in Support of its Cross Motion for Summary Judgment as Appendix A.)

While providing catering services on the OCEAN BREEZE, three Trident employees were injured during the course of their work. The employees sued Trident to recover for losses sustained as a result of their injuries, giving rise to the various payouts at issue in this lawsuit. The three injuries and claims are:

>   (1)  The Taylor claim, May 22, 2000: Taylor slipped and fell on a wet floor while loading supplies, injuring his left knee and lower back ($302,757.75 in losses claimed by Trident) (Reply Affidavit in Support

---

[1] The following facts are drawn from the parties' submissions. Where a specific statement or document is referenced, a separate citation is provided.
[2] Trident provided these services during all relevant times at issue in this lawsuit, but ceased for reasons unknown on July 31, 2007. (Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Pl. Mem.") at 2.)
[3] American Club is the only marine insurer of its kind in the United States. It is a P&I insurance association whose members pool claims that have been brought against them and then share the expense of paying those claims. The Club is operated by its members through an elected Board of Directors, which ultimately reviews and adjudicates whether and how much to pay on disputed claims. It is not a typical commercial liability insurer, but rather, a marine insurer.

      of Plaintiff's Motion for Summary Judgment, Raymond A. Connell
      Affidavit ("Connell Reply Aff.") ¶ 49).

  (2)  The Cartaya claim, June 29, 2000: Cartaya sustained injuries while
      jumping from the vessel to a tender ($359,393.56 in losses claimed by
      Trident) (Connell Reply Aff. ¶ 72).

  (3)  The Rivera claim, March 7, 2001: Rivera was an assistant cook who
      slipped on a galley floor, sustaining injuries to his heel and lower back
      ($201,913.19 in losses claimed by Trident) (Connell Reply Aff. ¶¶ 96,
      99).

  While litigating the various claims, American Club, via its management company SCB, communicated intermittently with Trident concerning the defense of the actions, but the extent of such consultation and the scope of SCB's participation in the defense remain in dispute.

  Trident eventually settled the Taylor and Rivera claims and won a jury verdict in the Cartaya claim, and then sought reimbursement from American Club under its P&I coverage for the expenses incurred in adjudicating the disputes, including the costs of settlement, medical care, attorney fees, and other litigation expenses. American Club initially denied reimbursement on the Taylor claim, and provided partial reimbursement on the Cartaya and Rivera claims, but those decisions were not final as they were subject to review by the Club's Board of Directors. Upon review, the Board affirmed the denial of the Taylor claim in its entirety, denied reimbursement for any amount in excess of $194,856.03 in the Cartaya claim (leaving $164,537.53 unpaid), and denied reimbursement on the Rivera claim (thereby reversing the initial approval of $65,000.00 reimbursement), in all cases citing various violations of the conditions precedent outlined in the Club's Rules. On April 19, 2005, Trident filed the complaint in this action, seeking full reimbursement for all three claims in the total amount of

$669, 208.47.[4]  American Club answered on June 10, 2005, denying liability; these cross-motions followed.

## DISCUSSION

I.  **Summary Judgment Standard**

A motion for summary judgment shall be granted if the pleadings demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). The moving party initially bears the burden of demonstrating that no genuine issues of material fact remain. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory allegations, conjecture, and speculation" are not enough to survive the summary judgment motion. Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F. 3d 171, 175 (2d Cir. 2003). For the purposes of summary judgment, the Court draws all factual inferences in favor of the non-moving party, "or, when cross-motions for summary judgment are filed, against the party whose motion is under

---

[4] This amount includes $302,757.75 on the Taylor claim, $164,537.53 on the Cartaya claim, and $201,913.19 on the Rivera claim. Trident's papers indicate that they seek $679,208.48 ($10,000.01 more than the Court calculates), but the Court has found a math error with respect to the Cartaya claim. Trident claimed a total of $359,393.56 on the Cartaya claim, and was reimbursed for $194,856.03 (although at one point in the Connell Reply Affidavit this number is listed as $194,856.13 (Connell Reply Aff. ¶ 77), the Court uses $194,856.03 because the latter appears both elsewhere in the Connell Reply Affidavit (Connell Reply Aff. ¶ 74) and the Plaintiff's Memoranda of Law (Pl. Mem. at 9, Plaintiff's Reply Memorandum at 18)). Subtracting $194,856.03 from $359,393.56 yields $164,537.53, not $174,537.54 as claimed in Trident's papers and the Connell Reply Affidavit. (See Pl. Mem. at 9, Connell Reply Aff. ¶ 77.)

4

consideration." Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 284 (2d Cir. 2005) (quotations and citations omitted).

## II. The Parties' Arguments

### A. Trident's Arguments

Trident's affidavit in support of its motion for summary judgment is three inches thick, and chock-full of depositions, documents, and pictures. Even a cursory review of the submission suggests that there are numerous questions of fact which preclude the granting of summary judgment. Trident's memorandum of law contends that American Club's attempts to disclaim coverage fail because its notices of disclaimer were: (1) untimely as a matter of law, and (2) did not contain the required level of specificity. (Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Pl. Mem.") at 5-12.) Second, Trident claims that American Club's disclaimers for non-cooperation were not supported, as required, by a showing that Trident undertook "willful and avowed obstruction" of the claims. (Pl. Mem. at 13-14.) Third, with respect to other potential grounds for disclaimer asserted by American Club, Trident contends that if the grounds were not raised in the formal notice of disclaimer, they are precluded. (Pl. Mem. at 14-16.) Fourth and finally, Trident argues that the American Club disclaimers are precluded by waiver and estoppel because a review of the facts reveals that American Club had no intention of providing reimbursement to Trident from the outset. (Pl. Mem. at 16-19.)

### B. American Club's Arguments

Not to be outdone, American Club's affidavits in support of its position are three and one-half inches high, and contain depositions, documents, and other miscellaneous evidentiary materials. The crux of American Club's response to Trident is that its unique status as a non-profit, mutual P&I insurance association, operated by its members through its Board of Directors, exempts it from specific state law standards and derivative case law which are applied

to traditional commercial liability insurers.[5]  (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross Motion for Summary Judgment ("Def. Mem.") at 11-14.)  As such, Trident's arguments concerning both the requirements regarding notice of disclaimer, waiver of disclaimer, and the "willful and avowed" obstruction claim, are non-applicable to the unique and specific marine P&I insurance contracts at issue here.

With respect to its own motion for summary judgment, American Club urges the Court to enforce the unique terms of its insurance contracts, as governed by the Club's Rules.  (Def. Mem. at 15-18.)  American Club claims that Trident breached certain provisions of the Rules which require, <u>inter alia</u>, that assureds provide for and control their own defense, and that they comply with the Club's enumerated conditions precedent to insurance coverage. (Def. Mem. at 18-19.)  In the absence of compliance with the conditions precedent, as alleged here, the Club argues that disclaimer was proper.  The Club also contends that Trident impermissibly delayed notifying the Club of the Rivera claim, the Taylor claim was fraudulently induced, and the Business Judgment Rule precludes the Court from reviewing the decisions of the Club's Board of Directors in adjudicating the claims.  (Def. Mem. at 19-24.)[6]  The Club also argues that the proper defendant in this action is not itself, but rather, IMCL (the primary assured), who

---

[5] Specifically, the Club argues that New York Insurance Law Section 3420 (and its predecessor, Section 167 of the New York Insurance Law of 1939) and subsequent case law (on which Trident relies extensively) apply only to commercial liability insurers (e.g., automobile insurers) and not to marine insurers such as the Club.  See N.Y. Ins. Law § 3420 (2002); N.Y. Ins. Law § 167 (1966 & Supp. 1984) (amended by N.Y. Ins. Law § 3420 (2002)).  This argument is compelling as numerous courts have exempted marine insurance contracts from various provisions of the statute.  See, e.g., In re Prudential Lines, 158 F.3d 65, 74 (2d Cir. 1998) (finding that although [Section 3420] altered traditional common law rules, "the statute expressly preserves application of the common law rule to marine insurance contracts, such as P&I policies"); Ahmed v. Am. S.S. Mut. Prot. & Indem. Ass'n., 640 F.2d 993, (9th Cir. 1981) (finding marine insurers exempt from the direct action provision of the statute); DeGeorge v. ACE Am. Ins. Co., No. 07 Civ. 2761 (RPP), 2008 WL 180786, at *5 (S.D.N.Y. Jan. 17, 2008) ("§ 3420(d) does not apply to policies of insurance in connection with ocean-going vessels.").

[6] Defendant also argues that Trident's coverage provided only "misdirected arrow" protection, which would not provide for reimbursement of the claims at issue.  The misdirected arrow defense, however, was abandoned at an earlier stage of this litigation and the Court denied Defendant's request to amend its answer to re-raise the defense.  See Trident Int'l Ltd. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, No. 05 Civ. 3947 (PAC) (S.D.N.Y. Nov. 29, 2007), reconsideration denied (S.D.N.Y. June 11, 2008).

6

promised in its contract with Trident to secure insurance on its behalf, and then, as the primary assured, failed to fulfill its obligations under the Rules of American Club. (Def. Mem. at 18.)

**III. Analysis**

Based upon a review of the parties' arguments, their respective (and voluminous) 56.1 statements, and the competing affidavits issued in support of these cross-motions, it is apparent to the Court that summary judgment is wholly inappropriate in this case. Significant and genuine issues of material fact permeate every aspect of this dispute.[7] Among other things, the parties disagree about the level of cooperation and the timing of communications regarding the various claims, and whether the parties' actions were, or were not, in compliance with their respective obligations under the insurance contract.[8]

With respect to Trident's motion, a finder of fact must determine whether the various communiqués sent from American Club to Trident were sufficiently specific and timely to disclaim coverage. As the New York Court of Appeals has stated, the question of whether a notice of disclaimer is timely "is a question of fact which depends on all the facts and circumstances, especially the length of and the reason for the delay. It is only in the exceptional

---

[7] Indeed, in the first footnote of American Club's 56.1 statement, defense counsel makes it plainly evident that numerous factual disagreements remain. He states:
> [T]he Club has no option but to respond paragraph by paragraph to Trident's Rule 56.1(a) Statement. Trident's Statement, however, is disorganized, repetitive and, in most cases, its statements of alleged fact are incomplete and otherwise inaccurate. . . . The Club regrets the length of this Statement which is caused by the need to correct Trident's numerous inaccuracies. . . .

(Defendant's Local Civil Rule 56.1(b) Statement ("Def. 56.1") at 2.) Defense counsel's response then rambles on for 118 pages. The sheer volume of the response coupled with the initial warning of the "inaccuracies" in Trident's submission makes the Court dubious that there are no genuine issues of material fact to resolve.

[8] For example, with respect to the Taylor claim, the Club complains that it "had not received any reports on the [Taylor] matter, [and] actually had to ask . . . if defense counsel had been retained" (Def. 56.1 ¶ 34(b)), and that "Trident was supposed to control the defense but left its attorney in the dark on important issues" (Def 56.1 ¶ 34 (Comment)). Trident contends, however, that its level of cooperation was never criticized, and that it supplied numerous reports and other information to the Club and its attorney with respect to the defense (Plaintiff's Local Rule 56.1 Statement ("Pl. 56.1") ¶ 48). As to the Rivera claim, Trident argues that IMCL was notified of Rivera's injury on June 14, 2002 (Pl. 56.1 ¶ 75), but American Club responds that this assertion "leaves out critical data and . . . is not accurate" (Def. 56.1 ¶ 75(a)) because, among other things, IMCL actually learned of the injury on March 9, 2001 (Def. 56.1 ¶ 75(b)).

7

case that it may be decided as a matter of law." Hartford Ins. Co. v. County of Nassau, 389 N.E.2d 1061, 1062-63 (N.Y. 1979) (citations omitted).

With respect to American Club's motion, insofar as Trident is covered as an additional assured by American Club's policies, its obligations to the Club are specifically delineated in the Club's Rules. Among other things, the Rules require—as conditions precedent to coverage—that the insured: (1) provide prompt notice of any "happening" which might invoke coverage (Rule 1, § 13); (2) avert or minimize any expense or liability that may be insured by the Club (Rule 1, § 13); (3) disclose all "information, documents or reports" concerning claims (Rule 1, § 13); and (4) "neither settle nor make any admission in respect of liabilities, costs or expenses . . . without the prior written consent of the [Club]" (Rule 1, § 13). It is undisputed that where an insured fails to comply with a condition precedent to insurance coverage, the insurance contract is vitiated. E. Baby Stores, Inc. v. Cent. Mut. Ins. Co., No. 07 Civ. 3890 (LAP), 2008 WL 2276527, at *2 (S.D.N.Y. June 2, 2008); Travelers Ins. Co. v. Volmar Constr. Co. Inc., 752 N.Y.S.2d 286, 288 (N.Y. App. Div. 1st Dep't 2002). But where, as here, the existence of compliance vel non depends on the resolution of factual issues, summary judgment is inappropriate. See Sphere Drake Ins. Co. v. Y.L. Realty Co., 990 F. Supp. 240, 242 (S.D.N.Y. 1997) (a determination as to the timeliness of compliance with a condition precedent to insurance coverage is generally an issue of fact); Klewin Bldg. Co., Inc. v. Heritage Plumbing & Heating, Inc., 840 N.Y.S.2d 144, 145 (N.Y. App. Div. 2d Dep't 2007) (denying summary judgment when the insurer did not demonstrate as a matter of law that the insured failed to comply with conditions precedent to coverage); Raymond v. Allstate Ins. Co., 464 N.Y.S.2d 155, 156 (N.Y. App. Div. 1st Dep't 1983) (reversing a lower court's decision to grant summary judgment because, "[o]n review of the record, we disagree and find that there exists a factual issue as to whether plaintiffs substantially breached any condition to coverage"). Whether Trident's

conduct constitutes compliance with the various conditions precedent is for a fact-finder to decide.

To the extent that numerous factual issues remain about whether American Club provided adequate notice of disclaimer, and whether, and to what extent, Trident complied with the conditions precedent to coverage, those issues—among countless others raised and disputed by the parties in their respective motions—must be resolved by a fact-finder evaluating the conduct of the parties over the time period at issue. The Court also finds that the insurance contract, interpreted in accordance with the Club's Rules, governs the relationship between the parties. Accordingly, all future arguments should proceed on the assumption that those terms— and not the provisions of Section 3420 of New York Insurance Law—control the dispute.

## CONCLUSION

For the reasons set forth above, the parties' cross-motions for summary judgment are DENIED. The Clerk of Court is directed to terminate both pending motions for summary judgment. The parties are directed to confer and contact the Court no later than August 6, 2008 to schedule a pre-trial conference in this matter.

Dated: New York, New York
       July 24, 2008

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge